## EMMA E. ABERNETHY v. JAMES A. HALK AND ANOTHER.[1]

### February 1, 1918.

### No. 20,678.

**Exchange of property — fraud — specific performance — loss of title by abatement proceeding.**

In an action for specific performance of a contract for the exchange of properties the defense was that plaintiff by false and fraudulent representations induced the deal. The court found this defense not proven. The title to part of the property which plaintiff agreed to transfer had been seized in an abatement proceeding, but was being used in the business which defendant Halk received from plaintiff. After Halk learned of the proceeding he nevertheless remained in the undisturbed possession of the property transferred to him for more than two months, and abandoned it on the day the title was perfected by plaintiff. It is *held*:

[1]Reported in 166 N. W. 218.

(1) Halk was not entitled at that time to rescind, the contract not having been induced by fraud.

(2) No error occurred in excluding evidence on matters not in issue, nor in refusing amendments to the answer during the trial which might raise new issues.

(3) An abatement proceeding does not eliminate the title of a defendant to the property seized therein until the entry of a decree to that effect, and it is not unlawful for a defendant to contract with reference to such property prior to the decree.

(4) Other errors assigned upon the rulings of the trial court examined and *held* to be without prejudice to appellants.

Action in the district court for Ramsey county to obtain from defendant Halk a warranty deed to certain premises, subject to a specified encumbrance. The facts are stated in the opinion. The case was tried before Orr, J., who made findings and ordered judgment in favor of plaintiff. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*James Manahan* and *J. D. Hoogesteger,* for appellant.

*William G. White,* for respondent.

HOLT, J.

The action is for specific performance of a written contract between plaintiff and defendant Halk, whereby the latter agreed to convey certain land in Pennington county, South Dakota, in consideration of the transfer and delivery to Halk of the household goods, furniture and good will of the business as conducted in a double rooming house known as Nos. 143 and 145 West Fifth street, St. Paul. The trial resulted in a decision granting plaintiff the relief asked. Defendants appeal from the order denying a new trial.

The main contention of defendants on this appeal is that the facts found do not authorize a decree for specific performance, for the reason that plaintiff did not own part of the furniture she agreed to transfer to Halk, and that the contract was illegal. The findings of fact are not challenged by any assignment of error, except in an unimportant particular. The decision of the trial court must therefore stand, unless the facts found do not support the conclusion of law or some erroneous ruling affecting the result occurred on the trial.

The evidence discloses these facts: In November, 1914, while one Edna Brooks was conducting a rooming house in the easterly part, or No. 143, of the double house mentioned and owning the household goods and furniture therein, an abatement proceeding was instituted by the state against the premises occupied by her. The owner of the building was made a party but was not served with process, being a nonresident. Edna Brooks defaulted. Her said personal property was seized by the sheriff, and stored in a room on the third floor of No. 143. In this situation, with nothing further done in the abatement proceeding, plaintiff, in February, 1915, leased No. 143 and opened a rooming house therein. In the first part of the next April she leased No. 145 for the same purpose. This double house had 11 rooms on each side. When No. 145 was leased she needed more furniture. Her son, who transacted all the business, herein referred to as her agent, consulted the county attorney and received permission from him to use the furniture which the sheriff had stored in No. 143. This was then taken and distributed through the various rooms of the whole building, wherein was also the furniture belonging to plaintiff. Plaintiff's agent testified to an agreement with Edna Brooks transferring her interest in the personal property seized by the sheriff to plaintiff for $225, less what it would be necessary for plaintiff to pay to secure the title that might be acquired through the abatement proceeding. Plaintiff conducted a rooming house in both No. 143 and No. 145 thereafter until August 6, 1915, when possession was taken by Halk under these circumstances: On July 31, 1915, a written contract was executed by plaintiff and Halk, whereby the latter agreed to exchange the land mentioned for the household goods, furniture and good will of the business in this double rooming house. The contract provided that either party should have 60 days within which to perfect the title to the property to be conveyed or transferred. After plaintiff's agent had examined the land, as was stipulated in the contract, he, according to his testimony, informed Halk that plaintiff had no title to part of the furniture, but that it would be obtained in a short time; and that, if Halk wished to consummate the deal, and obtain possession at once, the papers could be made out and left in escrow, to be delivered when the title was perfected. This was apparently agreed to by Halk, for he executed a deed of the land and plaintiff a bill of sale of the

furniture. Both were placed in the hands of defendant Hoogesteger, to be delivered when clear title to all the furniture was in Halk. Halk took immediate possession, and conducted a rooming house in the building until the evening of December 21, 1915, when he left and abandoned the place. The title to the part of the furniture seized in the abatement proceeding was perfected thus: A final decree was, on December 7, 1915, entered dismissing the proceeding so far as the building was concerned but directing the furniture of Edna Brooks to be removed and retained by the sheriff for 10 days and then sold by him. It was not removed or disturbed, but sold by the sheriff on December 21, 1915, to one Somers, acting for plaintiff who paid the purchase price of $200, and on the following day a bill of sale executed by Somers was delivered to Halk. The court found that Halk first learned of the true nature of the abatement proceeding on October 15, 1915. Thereafter Hoogesteger returned the deed of the land to Halk, but retained the bill of sale executed by plaintiff. Plaintiff took possession of the rooming house after Halk left it, but began this action within a month thereafter. She demanded the deed to the land before suit. The demand was not complied with.

The court found none of the allegations of the answer as to fraudulent and false representations true. The contract of exchange, the execution of which was admitted in the answer, must therefore be held binding. This contract gave either party but 60 days' time to perfect the title to the property to be exchanged, but time was not made the essence of the agreement and could be waived. By the answer and testimony defendants admit that there was a defect in plaintiff's title occasioning the escrow arrangement. It is unquestioned that, on the day Halk abandoned the personal property delivered to him under the contract and the escrow agreement, the title thereto was perfected by plaintiff, who next day delivered to him documentary evidence thereof. We fail to see wherein plaintiff was not then entitled to specific performance of the contract, there having been no fraud in its inception. The learned trial court in the memorandum states that, on learning of the abatement proceeding on October 15, Halk had the undoubted right to surrender the contract. This is probably correct, not, however, as appellants contend, on the ground of fraud, but for the reason that the good will of the rooming business which plaintiff had agreed to transfer as well as the use of part

of the household goods were then in jeopardy by the abatement proceeding, and it might have become impossible for Halk to have either used the personal property or the premises at No. 143 West Fifth street for rooming house purposes. But he then elected to retain the contract and take his chances of remaining in the undisturbed conduct of the business. He was not disturbed. And on December 7 the decree in the abatement proceeding removed all obstacle to the continuance of the business, and, as stated, on the day he abandoned the premises perfect title to the property was secured, so that there could be no question that plaintiff was in position to warrant and defend the title thereto according to the covenant in the bill of sale to Halk, held in escrow by defendant Hoogesteger since in August, 1915. There is nothing in appellant's point that Halk need not accept the bill of sale from Somers because he was entitled to plaintiff's covenants as to title. He already had her covenants by her bill of sale in escrow.

We think there is no merit in the errors assigned upon the refusal to the court to receive evidence as to the relative value of the exchange properties. Halk no doubt knew the value of the equity in his South Dakota land and the court found that there was no misrepresentation as to the value of the furniture or good will of the rooming business after hearing evidence respecting the same.

It is true enough that a court of equity may decline to enforce an unconscionable contract. But a defense on that score must be based upon allegations of facts and not upon conclusions. Leave to amend was sought, but amendments of pleadings on the trial are largely within the sound discretion of the trial court and we are unable to see any abuse in the denial of the amendments proffered.

Appellants argue very earnestly that the contract is illegal because it concerns property part of which had been seized in the abatement proceeding. It is said the contract is an attempt to nullify the effect of the abatement statute, and to interfere with the suit to enforce it. We discover no intent to evade the statute or impede its enforcement by this contract. It cannot be said that the institution or pendency of the abatement proceeding forfeited the property seized or terminated Edna Brooks' title thereto. Nor did her failure to answer divest her of ownership. Not until after the state had adduced proof sufficient to sustain the allegations

of its complaint as to the character of the business conducted by her and the use of the property seized could this be done. Surely, there could be nothing unlawful in the plan of plaintiff to acquire this property at the sheriff's sale. The more bidders the better price the state would obtain. Nor was there anything wrong in seeking to acquire the interest of Edna Brooks, for, as stated, the abatement proceeding might fail for lack of proof, in which case her ownership would have remained intact. Strictly speaking, the seizure of personal property under the abatement statute is in the nature of an attachment thereof pending suit, and does not affect the title of the owner thereto until a decree is entered forfeiting the same. We cannot see that it is of any importance to Halk that the county attorney permitted the furniture to be scattered through the house and used during the pendency of the proceeding, or that the sheriff sold it without removal as specified in the decree.

Error is assigned upon the refusal of the court to receive evidence touching what Halk had learned, subsequent to the deal, concerning the desirability of the premises for a rooming house. Since the court failed to find that any false or fraudulent representations were made in respect to the business or property to induce Halk to enter the contract, it follows that what he afterwards learned about it is of no consequence in this lawsuit. Neither is the alleged admission of plaintiff's agent, that he did wrong in selling the Brooks' furniture, material in view of the findings that no misrepresentations were made to bring about the exchange.

Halk was asked: "Why did you stay there after you found it had been condemned or after you understood it was in part at least owned by the sheriff, or had been condemned as a nuisance?" Error is assigned upon the ruling sustaining an objection to the question. This cannot be held reversible error. The court was not advised as to what the answer might be, and moreover the question assumed the situation to be very greatly different from what it actually was.

Neither can Halk ask for a reversal because the decision favors him by not referring to the chattel mortgage to which the contract provides that the transfer of the furniture shall be subject.

Our conclusion is that no prejudicial error is made to appear.

Order affirmed.